KASEN & KASEN, P.C.
Jenny R. Kasen, Esq. (NJ Bar No. 02771)
Society Hill Office Park, Suite 3
1874 E. Marlton Pike
Cherry Hill, New Jersey 08003
Telephone: (856) 424-4144
Facsimile: (856) 424-7565
E-Mail: jkasen@kasenlaw.com
*Pro Se Appellant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In the Matter of: | : | Case No. 17-cv-08370 - RBK |
|  | : |  Civil Action |
| CHRISTINA M. REDINGTON, | : |  |
|  | : | On Appeal from the United States Bankruptcy |
| Debtor(s). | : | Court for the District of New Jersey |
|  | : |  |
|  | : | Sat below: |
|  | : | Hon. Andrew B. Altenburg, Jr., U.S.B.J. |
|  | : |  |
|  | : | Case No.: 16-18407/ABA |
|  | : |  |

**BRIEF OF APPELLANT, KASEN & KASEN, P.C.**

Dated: January 23, 2018                Respectfully submitted,

KASEN & KASEN, P.C.

By: */s/ Jenny Kasen*
Jenny R. Kasen, Esq.
KASEN & KASEN, P.C.
Society Hill Office Park, Suite 3
1874 E. Marlton Pike
Cherry Hill, NJ 08003
Telephone: (856) 424-4144
Facsimile: (856) 424-7565
E-Mail: jkasen@kasenlaw.com

*Pro Se Appellant*

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ....................................................................... ii

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT .............................................................................................. 4

JURISDICTIONAL STATEMENT .......................................................................................... 4

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ................................................ 5

PROCEDURAL AND FACTUAL HISTORY ......................................................................... 6

    I.    Events Leading to the Debtor's Bankruptcy Filing ......................................................... 7

    II.    Law Firm's Successful Representation of the Debtor - Summary of Services Rendered 7

    III.    Law Firm's Fee Application .......................................................................................... 10

    IV.    Law Firm's Billing Judgment ....................................................................................... 11

        A. Travel Time .......................................................................................................... 11

        B. Filings .................................................................................................................. 11

        C. Service of Process ................................................................................................ 12

        D. Written Correspondence (E-Mails and Formal Letters) .......................................... 13

    V.    The Bankruptcy Court's Disallowance of $1,567.50 in Fees ......................................... 13

    VI.    Law Firm's Busy Beaver Request .................................................................................. 14

    VII.    Confirmation of the Debtor's Plan ................................................................................. 14

    VIII.    The Busy Beaver Hearing ............................................................................................. 15

SUMMARY OF ARGUMENT ............................................................................................... 16

ARGUMENT ........................................................................................................................ 17

    I.    Standard of Review ....................................................................................................... 17

    II.    Fee Awards in Chapter 13 Cases .................................................................................. 17

    III.    Busy Beaver ................................................................................................................... 18

    IV.    The Bankruptcy Court's Reversible Error ..................................................................... 19

CONCLUSION ..................................................................................................................... 21

CERTIFICATE OF COMPLIANCE WITH RULE 8015(a)(7)(B) OR 8016(d)(2) ................... 21

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure (the "**<u>Appellate Rule(s)</u>**") and Rule 8012 of the Federal Rules of Bankruptcy Procedure (the "**<u>Bankruptcy Rule(s)</u>**"), the above-captioned appellant, Kasen & Kasen, P.C. ("**<u>Law Firm</u>**"), a non-governmental corporate party to this appeal, by and through its undersigned counsel, hereby discloses that:

1.      Law Firm is a privately held New Jersey professional corporation that is wholly owned by attorneys David A. Kasen, Esq. and Francine S. Kasen, Esq.

2.      No parent corporation owns 10% or more of the stock of Law Firm.

3.      No publicly held corporation owns 10% or more of the stock of Law Firm

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bilazzo v. Portfolio Recovery Assocs.*, LLC, 876 F. Supp. 2d 452 (D.N.J. 2012) ....................... 18

*Boles v. Wal-Mart Stores, Inc.*, 650 Fed. Appx. 125 (3rd Cir. 2016) ............................................ 18

*In re Am. Pad & Paper Co.*, 478 F.3d 546 (3rd Cir. 2007) ........................................................... 17

*In re Boddy*, 950 F.2d 334 (6th Cir. 1991) ...................................................................................... 5

*In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833 (3rd Cir. 1994) ........................................................ 19

*In re Dahlquist*, 751 F.2d 295 (8th Cir. 1985) ................................................................................. 5

*In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116 (3rd Cir. 1999). ................................................ 17

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ................................. 18

*Klaas v. Shovlin (In re Klaas)*, 858 F.3d 820 (3rd Cir. 2017) ................................................... 4, 5

*Rode v. Dellarciprete*, 892 F.2d 1177 (3rd Cir. 1990) ................................................................ 18

*Staiano v. Cain (In re Lan Assocs. XI, L.P.)*, 192 F.3d 109 (3rd Cir. 1999) ............................... 18

*Ullman v. Superior Court of Pa.*, 603 Fed. Appx. 77 (3rd Cir. 2015) ......................................... 17

*United States v. Monahan (In re Monahan)*, 497 B.R. 642 (1st Cir. B.A.P. 2013) ....................... 4

**Statutes**

11 U.S.C. § 330 ............................................................................................................................... 17

28 U.S.C. § 158 ................................................................................................................................. 4

**Rules**

Fed. R. Bankr. P. 8002 ...................................................................................................................... 4

## PRELIMINARY STATEMENT

The above-captioned appeal (the "**Appeal**") centers around the Bankruptcy Court's (defined below): (i) disallowance of $1,567.50 in fees requested by Law Firm; and (ii) subsequent denial of Law Firm's numerous and express requests for a *meaningful* hearing on Law Firm's Fee Application (defined below) and a *fair* opportunity to address the Bankruptcy Court's question/objections thereto.  Specifically, the Order being appealed is the Bankruptcy Court's September 28, 2017 *Order Denying Motion for Reconsideration* [Bankr. D.I. 56] of Law Firm's Fee Award (defined below).

## JURISDICTIONAL STATEMENT

The United States District Court for the District of New Jersey (the "**Court**") has subject matter jurisdiction to hear timely filed appeals from final orders of the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**").  *See* 28 U.S.C. § 158 ("The district courts of the United States shall have jurisdiction to hear appeals[--] [] from final judgments, orders, and decrees...of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title [28 U.S.C. § 157].  An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving."); *see also* Fed. R. Bankr. P. 8002 ("a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed.").

In general, "[a]n order denying reconsideration is final if the underlying order is final and together the orders end the litigation on the merits."  *United States v. Monahan (In re Monahan)*, 497 B.R. 642, 646 (1st Cir. B.A.P. 2013) (*internal citation omitted*).  Importantly, however, "[t]he rules [of finality] are different in bankruptcy."  *Klaas v. Shovlin (In re Klaas)*, 858 F.3d 820, 826 (3rd Cir. 2017) (explaining that "[c]onsiderations unique to bankruptcy appeals have led [the Third

Circuit] to construe the factor of finality somewhat more broadly in this context..."). Specifically, the Third Circuit considers four factors in analyzing the finality of an order: "(1) the impact on the assets of the bankruptcy estate; (2) the need for further fact-finding on remand; (3) the preclusive effect of a decision on the merits; and (4) the interests of judicial economy." *Id.*

"While orders granting interim compensation in an ongoing bankruptcy proceeding generally are considered to be interlocutory in nature, the question of whether a particular order granting compensation is interlocutory or final necessarily depends upon the circumstances of the case." *In re Dahlquist*, 751 F.2d 295, 297 (8th Cir. 1985) (*internal citations omitted*); *see also In re Boddy*, 950 F.2d 334, 336 (6th Cir. 1991) (finding subject matter jurisdiction to vacate a bankruptcy court's interim fee award for a debtor's attorney in a confirmed Chapter 13 case notwithstanding the fact that "the law firm may request additional fees for post-confirmation services...").

Here, the Court has jurisdiction over this Appeal. First, the *Notice of Appeal* [Bankr. D.I. 58] was timely filed on October 10, 2017, less than 14 days after the September 28, 2017 entry of the Bankruptcy Court's *Order Denying Motion for Reconsideration* [Bankr. D.I. 56]. Second, the *Order Denying Motion for Reconsideration* [Bankr. D.I. 56] must be treated as a final Order. Indeed, and as detailed below, the Debtor has achieved plan confirmation, and Law Firm does not foresee having to render much, if any, post-confirmation services to the Debtor. Moreover, the Bankruptcy Court expressly ruled that: "[M]y reduction was reasonable in light of the evidence and in light of what the docket says, and in light of your responses and I don't think I'm going to change my position with that." *See* Appendix P. 54.

### STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The following issues are being presented on appeal:

1.      Whether the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") erred when it denied Law Firm's request to be apprised of the Bankruptcy Court's questions/objections to Law Firm's Fee Application (defined below) *in advance* of a hearing thereon.

2.      Whether the Bankruptcy Court erred when it denied Law Firm's request for an opportunity to supplement its Fee Application *after* Law Firm was apprised of the Bankruptcy Court's questions/objections to the Fee Application.

3.      Whether the Bankruptcy Court erred when it based its decision to disallow $1,567.50 in fees requested by Law Firm, in part, on Law Firm's alleged failure to exercise billing judgment for travel time and administrative work.

## PROCEDURAL AND FACTUAL HISTORY

As noted above, this Appeal centers around the Bankruptcy Court's: (i) disallowance of $1,567.50 in fees requested by Law Firm; and (ii) subsequent denial of Law Firm's numerous and express requests for a *meaningful* hearing on Law Firm's Fee Application (defined below) and a *fair* opportunity to address the Bankruptcy Court's question/objections thereto.

By way of background, Law Firm represents an individual debtor (the "**Debtor**") in connection with a chapter 13 bankruptcy case filed in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**"), and bearing case number 16-18407-ABA.

Law Firm was retained by the Debtor on September 3, 2015, and filed the Debtor's voluntary petition for relief under chapter 13 of the Bankruptcy Code on April 29, 2016 (the "**Petition Date**").

### I.   Events Leading to the Debtor's Bankruptcy Filing

As of the Petition Date, the Debtor had $47,078.98 in mortgage arrears, and was in serious jeopardy of losing her residence through foreclosure.  Also, as of the Petition Date, the Debtor had approximately $12,000.00 in general unsecured debt.

### II.   Law Firm's Successful Representation of the Debtor - Summary of Services Rendered

The primary goal of the Debtor's chapter 13 case was to resolve her mortgage arrears and to retain her residence.  With these objectives in mind, immediately after filing the Debtor's chapter 13 case, Law Firm prepared and filed a chapter 13 plan whereby the Debtor was to pay a total of $69,045.60 over a sixty (60) month term in order to cure her mortgage arrears, retain her residence and pay all allowed general unsecured creditor(s) in full.

Shortly thereafter, and as an alternative and less costly strategy for resolving the Debtor's mortgage arrears, Law Firm also performed all services necessary for the Debtor to obtain a loan modification through the Court's Loss Mitigation Program, including, among other things:

a.   Preparing, filing and prosecuting a *Motion for Approval to Participate in the Court's Loss Mitigation Program* [Bankr. D.I. 16] (the "**Loss Mit Motion**");

b.   Engaging in numerous and substantive communications with the Debtor in connection with the preparation of her loss mitigation application;

c.   Preparing and submitting the following documents to Carrrington:

i.   Borrower Authorization;

ii.   Dodd-Frank Certification;

iii.   Government Monitoring Data;

iv.   4506-T;

v.   Financial Statement;

vi.   HAMP Request for Mortgage Assistance (RMA);

vii.    Uniform Borrower Assistance Form;

viii.    Hardship Letter;

ix.    Proof of Occupancy;

x.    2014 Federal Tax Return;

xi.    2015 Federal Tax Return;

xii.    Pay Stubs;

xiii.    Final Judgment of Divorce; and

xiv.    Bank Statements;

d.    Engaging in numerous communications with Carrington through the Loss Mitigation DMM Web Portal;

e.    Engaging in numerous and substantive communications with the Debtor regarding the status of her loss mitigation efforts, her trial plan and her permanent modification obligations;

f.    Reviewing the *Transfer of Claim to Bayview Loan Servicing LLC* [Bankr. D.I. 25] filed by Carrington;

g.    Preparing and sending a *Qualified Written Request* to Bayview Loan Servicing LLC ("**Bayview**") regarding the service transfer of the loan and the Debtor's loss mitigation efforts;

h.    Engaging in numerous and substantive communications with Bayview regarding the service transfer of the loan and the Debtor's trial plan and permanent modification; and

i.    Preparing, filing and prosecuting *Debtor's Motion to Approve Loan Modification with Bayview Loan Servicing, LLC* [Bankr. D.I. 30].

Ultimately, and as a direct result of the services summarized above, Law Firm successfully obtained a Bankruptcy Court approved permanent loan modification for the Debtor which, among other things, completely resolved her pre-petition mortgage arrears and reduced her fixed interest rate from 6.5% to 3.50%.

In addition to the foregoing, Law Firm also performed all services necessary to achieve

confirmation of a plan of reorganization for the Debtor, including among other things:

a. Reviewing the chapter 13 trustee's *Objection to Debtor's Claim of Exemptions* [Bankr. D.I. 11];

b. Preparing and filing *Amended Schedule C* [Bankr. D.I. 12];

c. Preparing and filing a *Modified Chapter 13 Plan* [Bankr. D.I. 31];

d. Preparing and filing a *Second Modified Chapter 13 Plan* [Bankr. D.I. 42];

e. Preparing and filing *Amended Schedule(s): I, J, Summary of Schedules, Declaration About an Individual Debtor's schedules* [Bankr. D.I. 43]; and

f. Engaging in numerous and substantive communications with the Debtor regarding the status of her case, the interim and final confirmation of her Plan, and her Plan obligations.

Ultimately, and as a direct result of the services summarized above, Law Firm successfully achieved confirmation of a plan of reorganization for the Debtor (the "**Plan**") whereby the Debtor is to pay a total of $29,197.56 over a sixty (60) month term in order to pay all allowed priority and general unsecured creditor(s) in full.

In addition to the foregoing, and upon the Debtor's request, Law Firm also performed all services necessary to request certain information from Carrington about the Debtor's homeowner's insurance policy and the funds being escrowed by Carrington, including, among other things:

a. Preparing and sending a *Qualified Written Request* to Carrington requesting information regarding the Debtor's homeowner's insurance policy and the funds escrowed by Carrington; and

b. Engaging in communications with the Debtor regarding certain issues and questions she had regarding her homeowner's insurance policy and the funds escrowed by Carrington.

Ultimately, and as a direct result of the services summarized above, Law Firm was able to resolve all of the Debtor's issues and questions regarding her homeowner's insurance policy and the funds being escrowed by Carrington.

In addition to the foregoing, Law Firm also performed all services necessary to the administration of the Debtor's chapter 13 case, including, among other things:

a.      Preparing, filing and serving (when required) the Debtor's petition, plan, schedules, statement of financial affairs and means test;

b.      Providing the chapter 13 trustee with all required documents including, but not limited to, payment advises, redacted tax returns, bank statements, and real property valuations;

c.      Representing the Debtor at the meeting of creditors under § 341(a) of the Code;

d.      Representing the Debtor at all confirmation hearings;

e.      Filing all credit counseling certificates with the Court; and

f.      Providing such other legal services necessary for the administration of the case, including numerous and substantive communications with the Debtor.

### III.    Law Firm's Fee Application

On July 13, 2017, Law Firm filed *Kasen & Kasen's First Interim Application for Compensation and Reimbursement of Expenses Pursuant to Fed. Bankr. R. 2016, D.N.J. LBR 2016-5 and 2016-1* (the "**Fee Application**") [Bankr. D.I. 40].  *See* Appendix P. 1-27.  The Fee Application sought compensation for services rendered and reimbursement of expenses incurred from August 31, 2015 through July 10, 2017 (the "**Application Period**").  And, specifically, the Fee Application provided that, among other things, during the Application Period, Law Firm worked a total of 25.4 hours in connection with the Debtor's bankruptcy case, and incurred fees in the total amount of $8,067.50 and expenses in the total amount of $457.20.  Importantly, only $770.00 of said fees were for services rendered pre-petition.

The Fee Application contained a summary of the services rendered and costs incurred in the Application Period, and also included an itemized bill which contained a detailed day-by-day record of the services performed and of the time spent by Law Firm in connection with the Debtor's

chapter 13 bankruptcy case.  Specifically, the itemized bill contained, among other things, the dates that services were rendered, the initials of the professional rendering such services, the time spent to the tenth of an hour, and a description of the legal services performed.  The information in the itemized bill was extracted from the daily time records maintained by Law Firm as a routine business practice.  Law Firm's daily time records are recorded in the ordinary course of business for the purpose of billing all clients.  Furthermore, the billing rates contained therein are those regularly charged to Law Firm's clients.  Additionally, all services for which compensation was requested by Law Firm were performed for and on behalf of the Debtor and there were/are no agreements or understandings for the sharing of any compensation.

IV.    **Law Firm's Billing Judgment**

Some examples of the billing judgment exercised by Law Firm in connection with its Fee Application are as follows:

A.    **Travel Time**

There are no precedential rules or law that require Law Firm to reduce its billing rates for travel time.  Notwithstanding the foregoing, Law Firm exercised billing judgment by voluntarily reducing its billing rates by half for all travel time spent in connection with the services rendered.

B.    **Filings**

In the Application Period, Law Firm effectuated a total of thirteen (13) filings on the Court's docket.[1]  These filings were comprised of a total of thirty-five (35) individual documents. The foregoing work involved: (i) scanning and saving each of those thirty-five (35) documents into PDF format, one at a time; (ii) logging onto the Court's ECF website; (iii) selecting the Debtor's case and the appropriate filing "event"; (iv) uploading, one at a time, each of the thirty-

---

[1] Bankr. D.I. 1, 2, 3, 12, 13, 15, 16, 20, 28, 30, 31, 32 and 36.

five (35) PDFs; and (v) designating/typing in an appropriate description for each.  With respect to these filings, Law Firm exercised billing judgment by billing for significantly less time than that which was actually spent in connection with same.  Specifically, while Local Rule 2016-1 requires services to be billed in increments of 6 minutes (1/10[th] of an hour), and notwithstanding the actual time spent causing each of the thirty-five (35) above-referenced individual documents to be filed (the average for which far exceeded that which was billed), Law Firm billed for the filing of each of the foregoing thirty-five (35) documents at an average of only 1.62 minutes per document.[2]

### C.    Service of Process

In the Application Period, Law Firm sent a total of, at least, five (5) mailings in order to effectuate service of process for various documents filed in the above-captioned case. The foregoing five (5) mailings involved: (i) printing and compiling copies of the documents to be served; (ii) preparing mailing labels, mail receipts (when required), and return receipts (when required); (iii) weighing and preparing postage; (iv) stuffing envelopes; and (v) delivering same to an appropriate post-office drop box.  With respect to service of process, Law Firm exercised billing judgment by billing for significantly less time than that which was actually spent in connection with same.  Specifically, while Local Rule 2016-1 requires services to be billed in increments of 6 minutes (1/10[th] of an hour), and notwithstanding the actual time spent causing the service of each of the five (5) above-referenced mailings (the average for which far exceeded that which was billed), Law Firm billed for each of the foregoing five (5) mailings at an average of only 1.2 minutes per mailing.[3]

---

[2] Total of 3,420 seconds billed for filings / 35 documents filed = 97.71 seconds per document filed

97.71 seconds per document filed /60 seconds per minute = 1.62 minutes per document filed

[3] Total of 360 second billed for service of process via mailings / 5 mailings sent = 72 seconds per mailing

72 seconds per mailing /60 seconds per minute = 1.2 minutes per mailing

### D.     Written Correspondence (E-Mails and Formal Letters)

In the Application Period, Law Firm sent and received a total of, at least, one hundred twenty-one (121) non-ECF written communications in connection with the Debtor's bankruptcy case.  These written communications were in the form of *both* e-mails and formal letters.  While Local Rule 2016-1 requires services to be billed in increments of 6 minutes (1/10th of an hour), and notwithstanding the actual time spent on each of the above-referenced written communications (the average for which far exceeded that which was billed), Applicant exercised billing judgment by billing each of the foregoing written communications at an average of only 1.23 minutes.[4]

## V.    The Bankruptcy Court's Disallowance of $1,567.50 in Fees

The hearing on Law Firm's Fee Application was scheduled to take place on August 24, 2017 at 2:00 p.m. (the "**Fee Application Hearing**").  And, no opposition to the Fee Application was filed on the docket or otherwise received by Law Firm in advance thereof.

On August 24, 2017, prior to the 2:00 p.m. hearing, Law Firm called the Bankruptcy Court to confirm that its appearance at the Fee Application Hearing was not required in light of the fact that no opposition had been received.  In response to this inquiry, the Bankruptcy Court informed Law Firm that the fees requested in its Fee Application were going to be reduced, and that if Law Firm wished to be heard on the matter that it should appear at the Fee Application Hearing.

In reliance on the Bankruptcy Court's representations, Law Firm appeared at the Fee Application Hearing.  But, upon arrival, Law Firm was advised by the Bankruptcy Court that the

---

[4] Total of 9,000 seconds billed for non-ECF written communications / 121 non-ECF written communications = 74.38 seconds per written communication.

74.38 seconds per written communication /60 seconds per minute = 1.23 minutes per written communication

presiding Judge was not available to take the bench.  As such, no hearing actually took place on August 24, 2017.

The very next day, on August 25, 2017, the Bankruptcy Court entered an *Amended Order Granting Allowances* [Bankr. D.I. 45], which disallowed $1,567.50 in fees requested by Law Firm (the "**Fee Award**").  *See* Appendix P. 28-29.

## VI.     Law Firm's Busy Beaver Request

On August 31, 2017, Law Firm filed a *Request for Opinion, Opportunity to Supplement and Hearing on Kasen & Kasen's First Interim Application for Compensation and Reimbursement of Expenses Pursuant to Fed. Bankr. R. 2016, D.N.J. LBR 2016-5 and 2016-1* (the "**Busy Beaver Request**") [Bankr. D.I. 48].  *See* Appendix P. 30-31.  In its Busy Beaver Request, Law Firm not only requested a hearing on the Fee Application, but also requested: (i) to be apprised of the Bankruptcy Court's questions/objections to the Fee Application *in advance* of a hearing thereon; and (ii) an opportunity to supplement its fee application *after* it was apprised of the Bankruptcy Court's questions/objections to the Fee Application.

## VII.    Confirmation of the Debtor's Plan

Shortly thereafter, on September 14, 2017, the Bankruptcy Court confirmed the Debtor's chapter 13 Plan.

Although Law Firm may technically request additional fees for post-confirmation services, Law Firm has, to date, not needed to render any post-confirmation services to the Debtor.  Further, Law Firm does not foresee having to render much, if any, post-confirmation services to the Debtor, provided, of course, that the Debtor fulfils all of her obligations under her confirmed Plan.

VIII.    **The Busy Beaver Hearing**

In response to Law Firm's Busy Beaver Request, the Bankruptcy Court scheduled a hearing on Law Firm's Fee Application (the "**Busy Beaver Hearing**").  *See* Appendix P. 32-33.  But, at no point prior to the Busy Beaver Hearing did the Bankruptcy Court apprise Law Firm of its questions/objections to the Fee Application.  Indeed, Law Firm attended the Busy Beaver Hearing having absolutely no knowledge of the specific facts and/or legal theories that the Bankruptcy Court contemplated when it decided to disallow $1,567.50 of the fees sought by Law Firm.

At the Busy Beaver Hearing, the Bankruptcy Court raised a number of questions/objections to Law Firm's Fee Application, including, among other things, Law Firm's billing judgment for travel time and administrative work.  *See e.g.*, Appendix P. 48 ("There is work presumably filed at your full hourly rate, not a -- now you have paralegals, right? MS. KASEN: I don't have a paralegal, no."); Appendix P. 49 ("[T]hese numbers seem outside what the supplemental fee process would have been... I don't know -- I have no clear picture of it."); Appendix P. 53 ("[Here] in New Jersey it's customary to charge for half travel time, and I don't see that you did that because it's not laid out.").

On numerous occasions at the Busy Beaver Hearing, Law Firm argued that, because it had not been apprised of the Bankruptcy Court's questions/objections to the Fee Application in *advance* of a hearing thereon, Law Firm: (i) was not prepared, nor should have been made to, address such questions/objections on the fly; and (ii) should be given an opportunity to address the Bankruptcy Court's questions/objections through either a supplemental filing or a subsequent hearing.  *See e.g.*, Appendix P. 44-45 ("[R]espectfully, Your Honor, I mean I feel a little caught off-guard because I wasn't made aware of the objections and I'd really like the opportunity to hear... Well, I'd like to hear what the objections are and then have an opportunity to go back... and

review the file and then supplement the application.  THE COURT: No, we're going to do it today, there's no reason why we have to come back and supplement.  We'll do it today."); Appendix P. 47 ("[A]gain, Your Honor, if I had known of these issues in advance, I would be prepared to respond... to them now today."); Appendix P. 47-48 ("I think I'm being deprived due process by not having an opportunity to... know of these issues in advance and address them."); Appendix P. 55 ("I'd like to go back and look through the file and listen to the recording of the hearings so that I can address in some kind of supplemental certification each of the issues raised. And I think that Busy Beaver allows -- says that I'm entitled to that.").

Notwithstanding Law Firm's numerous and vehement requests for a fair opportunity to address the Bankruptcy Court's questions/objections, the Bankruptcy Court denied same, and entered an *Order Denying Motion for Reconsideration* [Bankr. D.I. 56] of Law Firm's Fee Award. Appendix P. 54 ("[M]y reduction was reasonable in light of the evidence and in light of what the docket says, and in light of your responses and I don't think I'm going to change my position with that.").

## SUMMARY OF ARGUMENT

The Bankruptcy Court erred when it failed to follow the procedure required by *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 846-47(3rd Cir. 1994).  The Bankruptcy Court was required to give Law Firm *advanced notice* of its questions/objection to the Fee Application, and an opportunity, *thereafter*, to supplement same.  The Bankruptcy Court wrongfully denied Law Firm's numerous and express requests for a *meaningful* hearing on its Fee Application and a *fair* opportunity to address the Bankruptcy Court's question/objections thereto.

Moreover, the Bankruptcy Court erred when it based its decision to disallow $1,567.50 in fees requested by Law Firm, in part, on Law Firm's alleged failure to exercise billing judgment for

travel time and administrative work.   In fact, Law firm exercised *significant* billing judgment for those services, as well as others.   Had Law Firm been given a *fair* opportunity to address the Bankruptcy Court's question/objections to its Fee Application, Law Firm could have presented evidence that it billed all travel time at half rate, and billed all filings, service of process and written correspondence at significantly less time than that which was actually spent, and significantly less time that which is permitted by Local Rule 2016-1.

## ARGUMENT

### I.   Standard of Review

The district court "review[s] the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Am. Pad & Paper Co.*, 478 F.3d 546, 551 (3rd Cir. 2007).  "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3rd Cir. 1999).

### II.   Fee Awards in Chapter 13 Cases

Section 330 of the Bankruptcy Code provides, in relevant part, that a court may award a chapter 13 debtor's attorney "reasonable compensation based on [among other things] a consideration of the benefit and necessity of such services to the debtor."   11 U.S.C. § 330(a)(4)(B).

The usual calculation of a proper attorneys' fee begins with the lodestar formula by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See e.g., Ullman v. Superior Court of Pa.*, 603 Fed. Appx. 77, 79-80 (3rd Cir. 2015) ("If the District Court finds that attorneys' fees are warranted, it must calculate the amount of the award beginning with the lodestar, which is a reasonable hourly rate multiplied by a reasonable number of hours expended."); *Boles*

*v. Wal-Mart Stores, Inc.*, 650 Fed. Appx. 125, 129 (3rd Cir. 2016) ("Attorneys' fees and costs awards begin with a calculation of the 'lodestar' amount, which is determined by multiplying a reasonable rate by the number of hours reasonably expended on the litigation.").

"Although the lodestar is presumed to yield a reasonable fee, ... courts retain discretion to adjust the lodestar." *Bilazzo v. Portfolio Recovery Assocs.*, LLC, 876 F. Supp. 2d 452, 458 (D.N.J. 2012) (*citing Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3rd Cir. 1990)).  Adjustments to the lodestar may be made based on a variety of factors, including but not limited to: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Staiano v. Cain (In re Lan Assocs. XI, L.P.)*, 192 F.3d 109, 123 (3rd Cir. 1999) (*citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

## III.    Busy Beaver

Binding Third Circuit precedent provides that:

> [I]f the court does disallow fees of a "good-faith applicant," the Code, see §§ 329(b), 330(a); see also Rule 2017(b) -- and perhaps even the dictates of due process, see U.S. CONST., amend. V -- mandates that the court allow the fee applicant an opportunity, should it be requested, to present evidence or argument that the fee application meets the prerequisites for compensation; canons of fairness militate against forfeiture of the requested fees simply because the court's audit of the application uncovers some ambiguity or objection….
>
> To make the hearing meaningful, the court should first apprise the applicant of the particular questions and objections it harbors, a role

which the adversary in a statutory fee case would typically play. See Rheam IV, 137 Bankr. at 155 (stating that the court holds hearings whenever, but only when, it has questions about the fee application). Contrary to a typical adversarial proceeding, when the bankruptcy court clothed in its administrative robe fulfills its duty to review a fee application without the applicant being present, the applicant cannot possibly know what evidence or legal theories the court is contemplating when it decides to disallow certain fees. Unless the applicant is afforded an opportunity to rebut or contest the district court's conclusions, the applicant would unfairly and undesirably be deprived of the chance to respond to and assuage the court's questions and concerns. Besides, the bankruptcy bar might well react to a regime offering the applicant no chance to respond to the court's concerns by spending an inordinate amount of time preparing overly detailed fee applications, which time may be billable to the estate, in an effort to anticipate all the idiosyncracies and inconsistencies of review the diverse bankruptcy judges might exhibit.

*In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 846-47 (3rd Cir. 1994).

## IV.     The Bankruptcy Court's Reversible Error

Here, the Bankruptcy Court committed reversible error on multiple fronts.  First, the Bankruptcy Court erred when it failed to follow the procedure required by *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 846-47(3rd Cir. 1994).  The Bankruptcy Court was required to give Law Firm *advanced notice* of its questions/objection to the Fee Application, and an opportunity, *thereafter*, to supplement same.  The Bankruptcy Court wrongfully denied Law Firm's numerous and express requests for a *meaningful* hearing on its Fee Application and a *fair* opportunity to address the Bankruptcy Court's question/objections thereto.  Specifically, at no point *prior to* the Busy Beaver Hearing did the Bankruptcy Court cede Law Firm's Busy Beaver Request by apprising Law Firm of its questions/objections to the Fee Application.  Indeed, Law Firm attended the Busy Beaver Hearing having absolutely no knowledge of the specific facts and/or legal theories that the Bankruptcy Court contemplated when it decided to disallow $1,567.50 of the fees sought by Law Firm.  Moreover, at the Busy Beaver Hearing itself, the Bankruptcy Court denied Law Firm's

numerous and vehement requests for an opportunity to supplement its Fee Application *after* having

learned of the Court's questions/objections thereto. *See e.g.*, Appendix P. 44-45 ("[R]espectfully,

Your Honor, I mean I feel a little caught off-guard because I wasn't made aware of the objections

and I'd really like the opportunity to hear... Well, I'd like to hear what the objections are and then

have an opportunity to go back... and review the file and then supplement the application.  THE

COURT: No, we're going to do it today, there's no reason why we have to come back and

supplement.  We'll do it today."); Appendix P. 47 ("[A]gain, Your Honor, if I had known of these

issues in advance, I would be prepared to respond... to them now today."); Appendix P. 47-48 ("I

think I'm being deprived due process by not having an opportunity to... know of these issues in

advance and address them."); Appendix P. 55 ("I'd like to go back and look through the file and

listen to the recording of the hearings so that I can address in some kind of supplemental

certification each of the issues raised. And I think that Busy Beaver allows -- says that I'm entitled

to that.").

Second, the Bankruptcy Court erred when it based its decision to disallow $1,567.50 in

fees requested by Law Firm, in part, on Law Firm's alleged failure to exercise billing judgment for

travel time and administrative work.   In fact, Law firm exercised *significant* billing judgment for

those services, as well as others.  Had Law Firm been given a *fair* opportunity to address the

Bankruptcy Court's question/objections to its Fee Application, Law Firm could have presented

evidence that it billed all travel time at half rate, and billed all filings, service of process and written

correspondence at significantly less time than that which was actually spent, and significantly less

time that which is permitted by Local Rule 2016-1.  Indeed, Law Firm billed each filing at an

average of only 1.62 minutes per document, service of process at an average of only 1.2 minutes

per mailing, and all non-ECF written communications at an average of only 1.23 minutes per communication.

## CONCLUSION

By this Appeal, Law Firm respectfully requests an Order: (i) permitting Law Firm to supplement its Fee Application; and (ii) directing the Bankruptcy Court to conduct an evidentiary hearing whereby Law Firm is given a *fair* opportunity to present evidence and arguments in support thereof.

## CERTIFICATE OF COMPLIANCE WITH RULE 8015(a)(7)(B) OR 8016(d)(2)

The herein brief complies with the type-volume limitation of Rule 8015(a)(7)(B) or 8016(d)(2) because:

⊠ this brief contains approximately 5,797 words, excluding the parts of the brief exempted by Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D), or

☐ this brief uses a monospaced typeface having no more than 10 1/2 characters per inch and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D).

Dated: January 23, 2018

Respectfully submitted,

KASEN & KASEN, P.C.

By: */s/ Jenny Kasen*
Jenny R. Kasen, Esq.
KASEN & KASEN, P.C.
Society Hill Office Park, Suite 3
1874 E. Marlton Pike
Cherry Hill, NJ 08003
Telephone: (856) 424-4144
Facsimile: (856) 424-7565
E-Mail: jkasen@kasenlaw.com

*Pro Se Appellant*